Matthew J. and Virginia R. Wojciechowski v. Commissioner.
Wojciechowski v. Commissioner
Docket No. 86963.
United States Tax Court
T.C. Memo 1963-22; 1963 Tax Ct. Memo LEXIS 322; 22 T.C.M. (CCH) 83; T.C.M. (RIA) 63022; January 25, 1963
*322 Sherwin C. Peltin, Esq., and Louis L. Meldman, Esq., for the petitioners. Jerome M. Feltman, Esq., for the respondent. WITHEY Memorandum Findings of Fact and Opinion WITHEY, Judge: A deficiency in the income tax of petitioners for the taxable year 1955 has been determined by the Commissioner in the amount of $16,563.27. By amendment to his answer, respondent seeks to increase the deficiency by $6,105.12. As a result of amendments to the petition and to the answer and as a result of the abandonment on brief by petitioners of certain of their original contentions and the settlement of another issue raised by the pleadings, the issues as finally framed are as follows: 1. Whether petitioners were the distributees of real property and improvements from their wholly owned corporation in September of 1955? 2. If the finding of the Court is affirmative on the first issue, whether the fair market value of such property was greater than $129,967.13? 3. If the finding on the first issue is in the affirmative, whether petitioners overreported "rental income" from the premises and whether they claimed as deductions excessive amounts for expense of operation and maintenance *323 of the building on such premises and for depreciation thereon? 4. Does petitioner's taxable income for 1955 include amounts paid by the corporation as reimbursement for travel and promotional expenditures determined to be petitioner's personal living expenses? Findings of Fact Such facts as are stipulated are found as stipulated. As hereinafter used the word "petitioner" has reference to Matthew Wojciechowski unless otherwise indicated. Petitioner and his wife Virginia reside at Milwaukee, Wisconsin. They filed a joint personal income tax return for 1955 with the district director for the district of Wisconsin. During 1954 and 1955 petitioner was sole stockholder, a director, and president of Superior Welding Company, a corporation having its office and place of business at Milwaukee. Virginia was secretary, treasurer, and a director of Superior. On July 13, 1951, Superior purchased, on land contract, property known as 4220 South 13th Street in what is now a part of Milwaukee. The property consists of land, building, and built-in equipment which comprise its business premises. The contract purchase price was $131,500, payable $25,000 down and the balance in monthly installments *324 of not less than $1,000 beginning August 1, 1951, with interest at the rate of 4 1/2 percent, payable semiannually on balances as of January 1 and July 1 of each year. In the early part of 1954 Superior sought a loan of $120,000 from a lending institution at Milwaukee. The loan was made, but only upon petitioner's personal credit evidenced by his primary liability on the note evidencing the loan. To secure repayment a mortgage on 4220 South 13th Street and other property owned by petitioner was executed by Superior and by petitioner, personally. After the proceeds of the loan were obtained, the land contract, above mentioned, was paid in full and, on Monday, March 1, 1954, the vendor thereunder by warranty deed transferred legal title to the property covered to Superior. On the Wednesday following, March 3, 1954, Superior by its quitclaim deed transferred title to the premises (4220 South 13th Street) to petitioners and, on the same date, petitioners mortgaged the property, together with the other property owned by them, to the lender of the $120,000, above-mentioned, to secure the same loan. [1] All of the above-mentioned instruments, except the original mortgage, were recorded March 6, 1954. *325 Beginning April 1, 1954, and through December 1957, Superior paid to petitioner by check a monthly amount designated on its books as rental for its business premises, the amount of each check being either exactly or nearly the amount due upon the lastmentioned mortgage and note. The rental checks were deposited by petitioners in their personal checking account, and a check was forthwith drawn by them upon their account and delivered to the mortgagee as called for by the mortgage. Late in 1954 Superior's books were undergoing audit by a firm of Milwaukee auditors. As a result of the auditor receiving information concerning the March 3, 1954, transfer of title of its business premises from Superior to petitioners, it determined that the transfer constituted a taxable event which would have serious disadvantageous effect upon petitioners' tax position; that the transfer had been without consideration and therefore amounted to a taxable distribution by Superior to petitioners; and that to cure the difficulty, it would be necessary to again place title in Superior *326 and, by reversing entries, show by its books that it had not paid rents to petitioners, but had in reality merely used petitioners as a conduit to make its mortgage payments. After consultation with petitioners' attorney and the auditors, a quitclaim deed was prepared and executed by petitioners on December 31, 1954, transferring title to 4220 South 13th Street and also title to the other property owned by petitioners, above referred to, to Superior. This deed was not recorded until April 15, 1955. The auditors submitted an adjusting entry as of December 31, 1954, to eliminate the charges made to a rent expense account. The 1954 income tax return of Superior, prepared by the auditors, does not show any expense for rental of the factory building, but does show payments of interest to the mortgagee, payments of taxes and insurance, and deductions for depreciation. The joint individual income tax return of petitioners for 1954, also prepared by the auditors, does not show the receipt of rental income nor the deductions for interest, taxes, insurance, expenses, or depreciation pertaining to the property. The books and records of Superior for 1955 reflected the same opening balances *327 for the land, building, office building, and crane as the 1954 books showed as closing balances. All of those balances, as well as those of the respective reserves for depreciation, were eliminated by an entry referred to as "Audit adjustment, journal entry 33." After the recording of the December 31, 1954, deed, the mortgagee which had made the $120,000 loan upon the primary obligation of petitioner objected to the transfer of title of its security (Superior's business premises) out of the hands of its primary obligor (petitioner). At an undisclosed date in September 1955, a deed (the nature of which is not clear in the record) was executed by petitioner, as president of Superior, transferring title to Superior's business premises, together with the other property covered by the December 31, 1954, deed, to petitioners. In their return for 1955, petitioners reported as taxable gain the difference between what they contend was the fair market value of 4220 South 13th Street, as of September 1955, and the balance of the mortgage indebtedness by which it was encumbered. They there reported the transfer of title last referred to. The fair market value referred to was reported by *328 them as $129,967.13. In his deficiency notice respondent computed the tax upon this transaction in the same manner, but used a fair market value of $175,000. Petitioner was in active managerial control of Superior during 1955 and, during that year, incurred or paid certain expenses claimed to be for travel and the entertainment of customers or prospective customers and suppliers in the promotion of Superior's business. Petitioner kept a record of all such expenses and, on the basis of such record, was regularly reimbursed by Superior. In his deficiency notice, respondent has included as dividend income taxable to petitioners $1,200 of the amounts so paid to petitioner by Superior on the ground that such payments constitute the payment of petitioner's personal living expenses. Ultimate Findings Petitioners were the beneficial owners of premises known as 4220 South 13th Street, Milwaukee, Wisconsin, throughout 1955. During 1955 Superior paid the personal living expense of petitioners in the amount of $1,200. Opinion The issues remaining before us are purely factual. Their resolution is dependent upon whether the form of the transactions of December 31, 1954, and September *329 1955 represent the substance thereof. We do not think they do so and have therefore found as a fact that petitioners remained the beneficial owners of the involved property throughout 1955, the year at issue. It seems clear to us that 4220 South 13th Street, Milwaukee, Wisconsin (hereinafter designated as factory property or building), was in substance purchased from Superior by petitioners on March 3, 1954, for a consideration of $120,000 represented by money borrowed in that amount upon the primary obligation of petitioners and paid by them to Superior. The record does not disclose any other transaction during 1954 or 1955 between petitioners and Superior wherein this property was transferred between them for a consideration. We view the December 31, 1954, transfer of its legal title from petitioners to Superior and the September 1955 transfer thereof from Superior to petitioners as completely insubstantial and without tax effect. The mere transfer of legal title to property or an interest therein absent any intent on the part of the grantor to thereby transfer the other incidents of ownership does not constitute a taxable event. , *330 affirming a Memorandum Opinion of this Court. The intent of the parties is the governing factor. When it became apparent on March 3, 1954, that Superior must borrow capital and was unable to do so, petitioner, in effect, obtained the required funds by borrowing upon his personal credit and obligation and paid the proceeds to Superior as consideration for the purchase of the factory property. [2] He thereafter rented the property to Superior for a monthly rental either exactly or approximately in the amount of the monthly payments due on the mortgage made as a result of the loan. When the March 3 transaction was brought to the attention of Superior's auditor, it, rightly or wrongly, advised petitioners that an adverse (to them) tax situation resulted from their acquisition of the property which it was of the opinion had been effectuated without consideration. Petitioners relied entirely upon others including the auditor with respect to tax matters. The auditor advised petitioners that, to avoid tax trouble, title to the factory property must be returned to Superior, reversing entries made upon its books indicating that the amounts then entered on the books as "rentals" were in reality *331 only mortgage payments of principal and interest, and other reversing entries made consistent with the ownership of the property by Superior. Petitioners were then upon the horns of a dilemma. On the one hand, their creditor insisted upon the property remaining in their hands in order to secure repayment of the $120,000 loan it had made and, on the other hand, their auditor, whom they believed, advised the opposite with respect to such title in order that tax difficulties might be avoided. We think this is the reason why the December 31, 1954, deed was not recorded for several months. It seems clear to us that the deed last mentioned was made solely for appearance sake and was not intended as a transfer of beneficial ownership in the factory property. Petitioners, however, were not yet clear of the troublesome dilemma for, upon the recording of the December 31 deed, their creditor was displeased and, although the record is by no means clear on the point, we think it fair to conclude, insisted upon the restoration of its security by yet another deed transferring the legal title back to petitioner, hence, the deed of September 1955. We conclude that this deed had no more substantial *332 effect than to remove the cloud on petitioner's title to the factory property created by the December 31, 1954, deed. It did not transfer the beneficial ownership therein which we have found had remained in petitioners since the deed of March 3, 1954. The transfer of the bare legal title was not a taxable event any more than was the transfer of December 1954. This is true because the absence of any intent by petitioners also to transfer the other incidents of ownership leaves the transaction without substance. The reality of the proposition that petitioners remained the substantial owner from and after March 3, 1954, is evidenced by the ensuing action of the parties to the deed transaction of that date. Superior has paid a monthly rental to petitioners since that date. The 1954 yearend entries made on Superior's books indicating to the contrary are merely book entries and do not alter the existing fact. Petitioners paid the expense of operation of the factory building, made the mortgage payments, and in their return for 1955 deducted an amount representing depreciation on the building. The auditor's preparation of petitioners' 1954 return showing no rental received from Superior and *333 no deduction for interest paid upon the mortgage, taxes, insurance, operating expense, or depreciation is not sufficient evidence to overcome the fact to the contrary testified to by petitioner. The corresponding entries on Superior's books and its 1954 corporation income tax return showing no rental paid to petitioners likewise have no effect upon the actual facts which are to the contrary. As is the case with the deeds of December 31, 1954, and September 1955, these indicia lack substance in that they were motivated by the dilemma above referred to and not by an intent to represent the actual facts. Petitioners are sustained on this issue. With respect to the addition to petitioners' income of $1,200 of the amounts paid petitioner by Superior as reimbursement of travel and entertainment expense, we must sustain the determination of the respondent for failure on the part of petitioners to sustain their burden of substantiation of such amounts as actual expenses of Superior paid by petitioner and reimbursed. The only evidence *334 offered by petitioner is so general in character as to be without probative force. It is apparent from the record that probative evidence was available to them in the form of detailed, day to day, records maintained by petitioner upon the basis of which reimbursement was made by Superior; yet no such records were offered as evidence. In this situation we are justified in concluding that the introduction of such records would have worked to petitioners' disadvantage. We are not impressed either with petitioners' argument that respondent's determination is arbitrary and for that reason cannot be sustained. Whatever was lacking in the detail of respondent's computation of the amount here involved in the statement attached to his notice of deficiency was supplied by the testimony of his agent upon the hearing hereof; yet there is no rebuttal on the part of petitioners with respect thereto. Respondent's determination is sustained on this issue. Because of our holding above petitioners are entitled to a deduction of $18.91 for real estate taxes for 1955 which was disallowed by respondent. Petitioners conceded at the trial that respondent has properly charged to them as income the fair *335 rental value of an automobile for 1955 in the amount of $576. Decision will be entered under Rule 50. Footnotes
1. The record is silent with respect to the original mortgage made by petitioner and Superior to secure this loan.↩
2. Dependent upon the fair market value of the property, this transaction may have resulted in taxable gain to petitioners, but that issue is not before us.↩